Our last case today is 4-12-0-6-5-7. In re. F.D. or People v. Ronald Petro. The show for the talent attorney, William Davis. You are he, sir? Yes, sir. From the Apple League, James Majors. Mr. Majors, okay. Mr. Davis, you may proceed. May it please the court? Counsel. Counsel. Justices, good afternoon. In reviewing this case, it is necessary to, in effect, break down the discussion and argument into, essentially, four separate pieces. There are two main contentions and two main issues within this case. The first being fitness of the parent tissue, and the second being the best interest of the minor, F.D. Under the umbrella of fitness are three separate issues, and it is necessary to go through all three. I would note for the court, as all the facts will be related to each of those three, and the fourth issue, the best interest issue, I will attempt to be brief in my statements and hopefully not say the facts over and over and over again. I will do what I can to make slight reference. Right. The first issue of fitness is the failure to maintain a reasonable degree of interest, concern, or responsibility. Your Honor, my brief also mentioned the issue that the trial court confined the review of information and evidence to a nine-month period, specifically May 11, 2010, to February 11, 2011. It confined those to all three issues, failure to maintain a reasonable degree of interest, the failure to make reasonable efforts to correct conditions that were the basis of removal, and the final one, failure to make reasonable progress. Your Honor, I conceded in our reply brief, the State was pointing to a case that was on point that I was not aware of. The nine-month period, May 11 to February 11, would be applicable to both reasonable efforts and reasonable progress issues. However, it's still our contention that the trial court committed an abuse of discretion by limiting the consideration for failure to maintain a reasonable degree of interest, concern, or responsibility to that nine-month period. There is no statutory framework, there is no statutory limitation in time period for that section of the statute. There are limitations for other areas of the statute. I believe it's a 30-day for a similar one, reasonable degree of interest, concern, or responsibility to a newborn. There are very specific time frames for other instances, but not this one. So I'll be making reference to the entire period of the case and not just that nine-month period. The test for reasonable degree of interest, concern, or responsibility is an objectively reasonable test. It takes into effect the parental difficulties with transportation, poverty, and hindrances to visitation. Your Honors, in this case, there were a number of these difficulties that were present. Throughout the period, there was about a year and a half period from September 2009 to January 2011, where the father had moved to Chicago. He did so because he felt threatened by the maternal grandparents, who were the custodial, I guess, parents, for lack of a better word, at that time. He lived at his mother's house, he lived in various campgrounds. He had difficulty in finding a place to live even after he returned to Springfield. There is evidence and testimony at the hearings that he lived first in a shelter, with friends, hotels, and then eventually was able to find an apartment in 2012. Much of that, Your Honors, is due to his financial difficulties. He was on Social Security Disability. He testified to that. It was in many of the service plans noted by DCFS, I believe four to five times was referenced. He had very limited financial means. And it's not a hard thing to guess how difficult it would be for someone to travel from Chicago to, at that time, Jacksonville during that 18 months for visitation, when you have limited financial means. Justices, I believe that given the financial hindrances, what he was able to do during that period is very reasonable. Reasonable interest. All of the DCFS service plans noted he showed concern. He advocated for the child. DCFS acknowledged that through its service plans. Again, interest and concern, same thing. Responsibility, the third tack on that. Your Honors, he tried. During the time he was in Chicago in 2010, he did go to parenting classes in October and November. He might not have signed the releases until 2011, I believe it was. But he did those classes to attempt to take responsibility. When he finally moved back, he sought out domestic violence classes that par with preventing abusive relationships. He went and attempted to get a mental health evaluation. He underwent anger management counseling at the Living Hope Center here in Springfield starting in November of 2011. Your Honors, he showed a reasonable degree of interest, concern, and responsibility. He was reasonable for his circumstances, for his limitations and the difficulties that he had, and what he was able to do. On the second issue, whether he failed to make reasonable efforts to correct the conditions that were the basis for FD's removal. Your Honors, that is a subjective standard. It's a reasonableness test. It's reasonableness for a particular person. And the key is that it looks to the intents of the individual. This really primarily, your argument that you've been making is addressed to reasonable efforts. What about the reasonable progress problem? Judge, the reasonable progress isn't like the other two. It's labels of reasonable expectations, reasonableness measurement. The key is it looks to reasonably expect under the circumstances. I'm sorry, say that again, the key what? Is that it looks towards the goal of reunification. I'm sorry, Your Honors. The key is that it's an objective standard, Your Honor, and that it focuses on the amount of progress towards the goal of reunification that one can reasonably expect under the circumstances. Are you suggesting that the court should not take into consideration the underlying basic capability of the person whose parental rights are thought to be terminated? I'm not sure if I understand your question, Justice. Well, if a person is limited in either their intellectual or physical capabilities that affect their ability to parent, they can try and try and try and try. They can go to class after class after class, but at the end of the day, they still don't have it. Is that what we have here? In some respects, yes, but in some respects, no, Your Honor. While the trial court properly limited the time frame for review to the nine months, what is an interesting tell in the situation is that once the father returned to Springfield in January of 2011, and I guess the Senate would say, well, it was actually once the petition was filed, he was able to maintain housing. He was able to undergo the classes. He was able to get the mental health evaluation, or go for a mental health evaluation, go to PAR, get anger management. There appear to be in this case a number of difficulties arising from, quite frankly, being in Chicago on SSI or SSD, Social Security Disability. There seems to be that breaking point. Like I said, the Senate can say that, well, it's clearly because there's a filing of this petition, but there's also this distinct factor. Efforts after the fact don't necessarily equate to progress. Yes, Your Honor, and I think one of the keys is what was he then able to do in Chicago during that nine-month period. And I would ask for reference to the court that he doesn't have to complete all the goals of the service plan. The service plan is the means, it's not the end. And this reasonable test requires an apparent taking, minimum, measurable, or demonstrable movement towards the goal. Well, no, it's more than that. What we're talking about is at the time of the hearing, that the progress was made, the progress has been such that the trial court came to conclude that in the near future, reunification between the respondents and this trial will occur. And I believe... Where is the evidence to demonstrate that? Or, more accurately put, the burden you have is to demonstrate trial courts finding a failure of reasonable progress in accordance with that standard was contrary to the manifest way of the evidence. And what is there to demonstrate that the court was wrong? What is there to demonstrate that in the near future, based upon the progress your client has made, that this reunification will occur? Your Honor, solely confined to that nine-month period, there were visitations prior to his move to Chicago in September of 2009. In September of 2010, he did undertake those parenting classes in Chicago in October and November. There were certificates that were filed with the court to show a successful completion of those classes. Your Honor, I think one of the keys is, though, while many of the other goals of the service plan were not completed during that time period. Lord knows Mr. Tatro was not perfect throughout this process. Well, this goes back to Justice Appleton's question. Efforts may have been made, and maybe even... efforts under the circumstances given the difficulties... commendable efforts. But the question is, in the near future, what evidence is there to show in the near future that reunification with this child can occur? That is, as this court has written a lot, parties can continue to make reasonable efforts and meanwhile this child gets older and older and older and doesn't have what every child deserves, namely a loving, stable, permanent home. The child continues to live in foster homes while waiting for the parent to establish a residence where the child can now come live. What is the evidence of that? The evidence of that within that nine-month period, Your Honor, was completion of those parenting classes, but also the DCFS evaluator casework on the service plan during that time frame did actually market a satisfactory so far as housing as he was at the time in Chicago living with his mother. He was living with family. He had some stable residence there. Obviously towards the end of that time period, as has been discussed, he moved back down to Springfield and again had a little bit of difficulty. But I think that those instances... You see, moving back and he's having a little bit of difficulty suggests that the trial court was entirely correct in deciding that no, in the near future we don't have a permanent situation for the respondent. He's not ready and this child will be left to linger in foster homes and by the way, this is no criticism of foster parents. I think they're the unsung heroes of not just juvenile court system, but society in general. They're not permanent. This child will be lingering in foster homes to a permanent home of his own while more efforts are made. But the goal is not efforts. The goal is a definitive return. I don't see how on this record we can conclude that the trial court was mistaken in deciding reasonable progress had not been made towards the return of this child to the respondent's custody. Well, Your Honor, I guess I would just reiterate the progress that was made. He did take steps, maybe not all of them. He didn't maybe make his way all the way up the stairwell, so to speak, but he did make his way up some steps. It's not horseshoe's counsel. No one's disputing he made some steps, but he didn't make enough. He didn't make, you know, what situation isn't there yet. So the trial court, I don't see on what basis we are going to second guess. Go ahead, I'm sorry, I interrupted your argument. Your Honor, I guess my only other concern to raise to the court with a situation like this, obviously the statute is what the statute is where it provides the first nine month period and then it provides, I believe it's D3, the next section under reasonable progress for any subsequent nine month period. This was the first nine month period. In some respects, I would argue to the court that the trial court jumped the gun a little bit. They didn't, yes, they could. They could on the first nine month period. It's totally within their statutory authority. But in many respects, they jumped the gun and didn't try to second nine month period. It might not be the best legal argument, I will fully admit to the court. When was Melinda, the child's mother, continuing to live with or have contact with your client? Was it when he was in Chicago or when he was in Springfield? When he came back to Springfield, more accurately. Your Honor, I believe the evidence showed that for a considerable number of months, I'm not sure if the evidence showed exactly how many, when he was up in Chicago, she was down here. So when he came back from Chicago, did he reunite with her to some degree? I believe the evidence also showed she went up to Chicago and lived with him. The evidence at the hearing so far as the separation of the mother from him or from the child to be returned, the evidence at the hearings was that Mr. Tatro had an apartment here in Springfield, that Melinda, the mother, lived there, but it was in such a circumstance that it was separated. What would a trial judge make of that? This woman who has been hostile with DCFS, who gave up the rights to the child because she didn't want anything to do with the child. She didn't want to raise it. She and Tatro have been involved in domestic violence incidents where it's unclear to me which of them says they're the aggressor or the other is the aggressor. He doesn't complete domestic violence counseling. His counselor or the person working with him disputes that he was ever asked to sign any document that said, I'm the aggressor, if I don't sign that,  He then wants to be the father to this child while maintaining this relationship, even though it is one which apparently has a door between the two living areas. That doesn't sound like any progress at all. That sounds like a continually evolving dynamic of problems. I think the separation of living spaces was something that Mr. Tatro believed was beneficial. Obviously there are separations in the relationship, but I think the separation of living spaces and separation of the child from the mother would have been beneficial. It would have been progress for the father to make in order to get the child back. I believe that reasonable progress was being made throughout that period. I would obviously ask the court to rule as such. So far as the final one, the best interest, the evidence was showing at the hearings that there were improvements in the relationship. They were during the visitations and at the time Ronald was making significantly more visitations than he was at other points throughout. But in that period from, I believe it was June of 2011 until April of this year, 2012 at the times of the hearings, he had made all but I believe one visitation. One of the ten offered visitations that they were improving in their relationship. That shows that it would have been in the best interest of the child to be able to live with her father for him to be granted custody or at least not have his rights terminated. That growing and increasing relationship was beneficial. Justices, at that time my argument concludes and I would ask that the court reverse the trial court from here in San Diego County and remain. Thank you very much. If you may please the court, counsel. It's my intention to be brief unless the court views it otherwise. The court is focused in on the I think one unassailable ground of unfitness, the failure to make reasonable progress. I don't think I need to discuss the facts anymore than the court has already discussed them. I would only point out at page 21 of the original brief on behalf of the respondent. The fifth or sixth line down quoting briefly it says this is respondent's brief. In the case of Barr, during the nine month period very few of the services were completed. The only completed goal was the completion of parenting classes, which is an accurate statement of the evidence, brief but accurate. So I think one ground was enough and that ground clearly was proven by clear and convincing evidence. As to the best interest, this child as the court notes was taken a few days after birth and placed with her maternal grandparents and to the best of my knowledge has been there ever since. All this evidence about respondent doing this and respondent having this intention or that intention to a large extent is based on his own testimony, which I suggest the record plainly shows to not be credible. I don't think necessarily the respondent is lying but I don't think he has the proper mental frame of reference to see the facts clearly and probably the most glaring deficiency is his failure to complete mental health services throughout the entire life of this case. Perhaps the trial court mistakenly believed that there was a nine month time period as to interest, concern or responsibility. I don't think the record clearly shows that but even if that's the case we still have failure to make reasonable progress, we still have failure to make reasonable efforts and looking at the entire time period as one would do with interest, concern or responsibility still the evidence supports the trial court's decision that unfitness was proven on that ground. Any questions? Seeing none, thank you Mr. Majors. Mr. Davis, anything further sir? No, unless the court has any questions. I have two just to clarify. One, I presume you were not trial counsel. I was not, Your Honor. So you're stepping in for another member of your firm on the appeal? Yes, Your Honor. Are you or your office aware have any awareness that Mr. Tatro has filed a pro se appeal and while we just got it so the record hasn't been fully looked at carefully, it appears to be an appeal of the same case. Are you aware of that at all? We are aware of that, Your Honor. You're not conceding anything but does it appear to you at first blush that it is simply a pro se appeal of the same matter? That's how I've always seen it, Your Honor. We've never directly addressed it. Our office or Mr. Foltz or myself have never directly addressed that issue other than obviously we get some in the mail from the appellate court and from the circuit court. So it's under the theory, I take it, that he's discharged you and wishes to proceed on his own? Your Honor. Or does he even make reference to that? We have not addressed it as such. Well, I mean he's discharged you for the... Well, it's the second bite of the apple because he's done with you guys. Yes, Your Honor. I think I'm hearing you a little bit now. Thank you, counsel. Thank you, Justice.